398

23192. GOMEZ *v.* GREAT ATLANTIC AND PACIFIC TEA
COMPANY.

DECIDED JANUARY 22, 1934.  REHEARING DENIED FEBRUARY 5, 1934.

*Love & Fort,* for plaintiff.    *George C. Palmer,* for defendant.

JENKINS, P. J.   This is a suit of a sixteen-year-old boy by his
mother as next friend, for damages on account of an assault and
battery by the manager in charge of the business of a grocery and
mercantile store of the defendant company.   The court on general
demurrer dismissed the amended petition.   The substance of the
cause alleged is that, while the boy was in the store with money in
his hand to make a purchase, the manager, who was in charge of
and had general supervision over the company's business in the
store, directed him to take out a sack of flour to an automobile near
the store, and upon his failure and refusal to do so, tossed the sack
at him; that he stepped aside and let the same fall to the floor;
that "then and there the said (manager) grew violently angry with
petitioner," grabbed and shook him roughly and violently, took him
up bodily by the back of his neck and trousers, and threw him
through a screen door of the store into the street, inflicting the in-
juries described; that the boy, as a customer, was in the store as an
invitee of the company; that the manager, in the perpetration of
the alleged tort, was in the discharge of his duties as such and in
furtherance of the master's business in directing the boy to take
the sack of flour, which was "being sent out of said store in the
regular course of trade and delivery of groceries by said (manager)
while conducting and transacting the business of the said com-
pany;" and that the boy did nothing, other than as stated, to pro-
voke the manager's attack.

"A customer lawfully on the premises of a mercantile establish-
ment for the purpose of transacting the business for which the
establishment is operated is there by invitation of the proprietor

of the establishment, and if, while thus lawfully on the premises, he is unlawfully assaulted and beaten by an employee of the proprietor while acting within the scope of the employment, the proprietor is liable therefor." *High Co.* v. *Holler,* 42 *Ga. App.* 657 (157 S. E. 209); *Lemaster* v. *Millers,* 33 *Ga. App.* 451 (126 S. E. 875). See also Smothers *v.* Welch Co., 310 Mo. 144, 274 S. W. 678 (40 A. L. R. 1209, notes, 1212-1222).

2. While section 3603 of the Civil Code (1910) declares that "the principal is not liable for the wilful trespass of his agent, unless done by his command or assented to by him," section 4413 makes a person liable "for torts committed by his . . servant, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary." Reconciling any apparent difference between these sections, where there is no express command a master is deemed to have impliedly "assented" to and becomes liable for the wilful torts of his servant only when they are committed "in the prosecution and within the scope of his business." Thus, notwithstanding that under common law and earlier decisions an employer was not liable for the malicious and intentional torts of his employee although committed while forwarding the employer's business (18 R. C. L. 799), it is now well established in this State and is the general rule that "a master is liable for the wilful torts of his servant, committed in the course of the servant's employment, just as though the master had himself committed them." *Central of Ga. Ry. Co.* v. *Brown,* 113 *Ga.* 414, 416 (38 S. E. 989, 84 Am. St. R. 250); *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 550 (58 S. E. 38, 10 L. R. A. (N. S.) 1176); 39 C. J. 1292. "Where the servant acts not in the prosecution of his master's business or within the scope of such business, the master can not be held liable, no matter how wanton or wilful the conduct of the servant." *Greeson* v. *Bailey,* 167 *Ga.* 638, 641 (146 S. E. 490). "So that, if the servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another, not within the scope of his employment, the master is not liable. But if the act be done in the execution of the authority given him by his master, and for the purpose of performing what the master has directed, the master will be responsible, whether the wrong done be occasioned by negligence, or by a wanton or reckless purpose to

accomplish the master's business in an unlawful manner." *So. Ry. Co.* v. *James,* 118 *Ga.* 340, 343 (45 S. E. 303, 63 L. R. A. 257); 18 R. C. L. 799, 800, 807-809.

3. In determining the liability of the master for the negligent or wilful acts of a servant, the test of liability is not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment. Cobb *v.* Simon, 119 Wis. 597 (97 N. W. 276; 100 Am. St. R. 909); Slater *v.* Advance Thresher Co., 97 Minn. 305 (107 N. W. 133, 5 L. R. A. (N. S.) 598); Stone *v.* Hills, 45 Conn. 44 (29 Am. R. 635); Edwards on Bailments (3d ed.), § 389. If the servant step aside from his master's business, for however short a time, to do an act outside the scope of and not in furtherance of the work of his employment, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not. *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470 (65 S. E. 322); *Atlanta Coca-Cola Bottling Co.* v. *Brown,* 46 *Ga. App.* 451 (167 S. E. 776); *Atlanta Baseball Club* v. *Lawrence,* 38 *Ga. App.* 497, 499 (144 S. E. 351); Firemen's Fund Co. *v.* Schreiber, 150 Wis. 42, 135 N. W. 507, Ann. Cas. 1913E, 829). Thus, where a servant, while engaged in the line of his duties for his master, commits an assault and battery upon another because of a personal quarrel or some provocation previously existing or suddenly arising, and disconnected with and not pertaining to the business of the master then in process of transaction, the master is not liable. *Lynch* v. *Fla. Cen. Co.,* 113 *Ga.* 1105, 1108 (39 S. E. 411, 54 L. R. A. 810); *Christian* v. *C. & R. Ry. Co.,* 79 *Ga.* 460 (7 S. E. 216); *Ga. R. Co.* v. *Richmond,* 98 *Ga.* 495 (2) (25 S. E. 565); *Dugger* v. *Cen. of Ga. Ry. Co.,* 36 *Ga. App.* 782 (138 S. E. 266); *S. E. Fair Asso.* v. *Wong Jung,* 24 *Ga. App.* 707, 709 (102 S. E. 32).

4. Except in plain and palpable cases, it is for the jury to decide whether the servant was acting within the scope of and in furtherance of his employment when he committed the tortious act in question. *Century Building Co.* v. *Lewkowitz,* 1 *Ga. App.* 636 (57 S. E. 1036); *Atlanta Hub Co.* v. *Jones,* 47 *Ga. App.* 778 (171 S. E. 470); 39 C. J. 1297, 1362, §§ 1493(d), 1593. The principle that, "if a servant or employee, while engaged in the business of his master, makes a slight deviation for ends of his

own, the master remains liable when the act was so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may nevertheless fairly be regarded as within the course of his employment" (*Limerick* v. *Roberts,* 32 *Ga. App.* 755, 124 S. E. 806), is qualified by the rule that, where the question of deviation, and its degree and effect, arises, the question should be submitted to the·jury, "in this connection, whether or not the deviation from the master's business was 'slight,' so slight as not to affect the master's responsibility for the negligent acts," and it becomes "the duty of the jury to determine whether the act was 'so closely connected with the master's affairs,' without any standards or basis for determining this important question." *Bunch* v. *McLeskey,* 173 *Ga.* 545 (2), 548 (161 S. E. 128).

5. On the case as presented upon general demurrer to the amended petition, there is no allegation that the manager in charge of the defendant's business was of such a character or temperament that the master knew or in the exercise of ordinary diligence ought to have known that some such act or occurrence as is charged by the petition was likely to happen. So far as the petition indicates, the servant as manager of the business was well chosen. The petition does indicate, however, that the manager was in charge of the conduct of the business of the mercantile establishment where the alleged tort occurred. Under the allegations of the petition, it is to be inferred that he had power to engage help and was authorized to call on any person in his discretion in furtherance of the conduct of the master's business. In view of these averments, the alleged conduct of the manager in calling upon the plaintiff to perform duties in furtherance of such business, and the alleged acts and conduct of the manager in assaulting the plaintiff when he refused to comply with the manager's request or order to perform the service pertaining to the business of the manager's employment, it can not be said that the alleged acts and conduct of the manager amounted, as a matter of law, to nothing more than a private brawl or altercation disconnected with the duties of his employment; but, on the contrary, the question as to whether the manager in doing the alleged acts complained of was acting within the scope of and in furtherance of his duties as manager was a question which should be submitted to a jury, and it was error to dismiss the petition on demurrer. In this respect the instant case

402

is distinguishable from *S. E. Fair Asso.* v. *Wong Jung,* supra; *Daniel* v. *Excelsior Auto Co.,* 31 *Ga. App.* 621 (121 S. E. 692) ; *Atlanta Coca-Cola Bottling Co.* v. *Brown,* and *Atlanta Baseball Co.* v. *Lawrence,* supra.

    *Judgment reversed.*   *Stephens and Sutton, JJ., concur.*

ON MOTION FOR REHEARING.

JENKINS, P. J.· The defendant in error, in its motion for rehearing, contends that the ruling of this court, to the effect that the allegations of one of the paragraphs of the petition, setting up that the manager alleged to have made the assault was as· such manager in general charge of the company's business pertaining to the operation of that particular store, made it inferable that he, as such manager, had power to engage help and was authorized to call upon any person in his discretion in furtherance of his master's business, is negatived by the allegations in another paragraph of the petition, wherein it is alleged that the plaintiff was in said store on peaceful and lawful business, disturbing no one, was not working for said company, and that said manager had no right to order him to do an errand for him or for said company, and that he was within his rights to decline to be made a servant and errand-boy by said manager. Movant urges that the plaintiff thus pleaded himself out of court by alleging that the servant had no right or authority to ask him (petitioner) to perform a service for the master. We think that the allegations last referred to amount to nothing more than an averment that the manager had no right or power to *compel* petitioner to become a servant, and that the petitioner had a right to decline to become one; but they do not negative the idea, under the preceding allegations, that the alleged assailant had the right to call upon the petitioner to act in such capacity. The right of the manager, acting for his principal, to call upon the plaintiff to become a servant of the company, and the right of the plaintiff to refuse to become such, are two separate and distinct ideas.

The motion also makes the contention that the manager, in general charge of the company's business, was unauthorized to call upon the plaintiff to do something that he himself was employed by the master to do, and that he had no authority from the master to thus delegate his own duties to another. We think that the petition does not indicate that the manager, alleged to be in general

charge of the company's business at the store, was under a duty himself to perform the particular act which he called upon the. plaintiff to do; but indicates that, as such general manager in charge of such business he was authorized to do any and all things necessary in the conduct of such business, including the right to call upon others for their assistance in furthering the company's business. The fact that he as manager was in general charge of its business relating to the operation of this particular store does not mean that he himself was required to perform all of the labor incident thereto with his own hands. *Rehearing denied.*