23424. AMERICAN SECURITY COMPANY *v.* COOK.

DECIDED SEPTEMBER 26, 1934.

*George F. Fielding,* for plaintiff in error.

*Robert F. Turnipseed,* contra.

GUERRY, J. The petition in the present case alleges that McDonald was the agent of the American Security Company, which was engaged in the money-lending business, and that McDonald's business, as such agent, was that of soliciting business, and the making of collections of money or property for that company; that at the time of the alleged injury the said McDonald, acting in the scope of his duties as such collector and in behalf of such company and in and about its business, came to the home of the plaintiff for the purpose of either collecting money alleged to be due to said company, or to take up the furniture of the plaintiff; that McDonald came first to the front door and kicked on the door, and then went to the back door and kicked out the screen to said door, and walked in without being invited in, and immediately demanded of the plaintiff the money alleged to be due on the furniture; that the plaintiff advised McDonald to see his lawyer, whereupon McDonald,

without provocation from the plaintiff, began cursing the plaintiff, using vile and opprobrious words and terms directed at the plaintiff and in the hearing of the plaintiff's wife and brother-in-law, who were in the adjoining room; that although requested to desist, McDonald continued such language and refused to leave the plaintiff's home, although requested so to do, and did not leave the plaintiff's home until he threatened to call the police; that such conduct of McDonald caused physical injuries to his wife and in a named manner, and loss of use of the wife, and caused suffering and embarrassment to the plaintiff, all in a named sum. A demurrer to this petition was overruled and the American Security Company excepted.

In *Fielder* v. *Davison,* 139 *Ga.* 509, 511 (77 S. E. 618), it was said: "Omitting the fellow-servant doctrine, the general rule is that a master is liable for the tort of his servant, whether negligent or voluntary, if done by his command or in the prosecution and scope of his business. Civil Code, § 4413. The expressions, 'in the scope of his business,' or 'in the scope of his employment,' or similar words, *have sometimes been given too narrow a meaning* [italics ours]. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's business, that is, *if the servant is at the time engaged in serving the master, the latter will be liable"* [italics ours]. *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 550, 553 (58 S. E. 38, 10 L. R. A. 1176). But for a tort committed by the servant entirely disconnected from the service or business of the master, the latter is not responsible under the doctrine of respondeat superior, although it may occur during the general term of the servant's employment." The true question in this case is, was McDonald acting at the time in the business of the master or was his action purely personal and without regard to the business of the master? In the pleading it is not intimated that there was any personal dispute between McDonald, the agent, and the plaintiff that caused the injury complained of, or that the servant "stepped aside from his master's business" as the servant did in the case of *Atlanta Coca-Cola Bottling Co.* v. *Brown,* 46 *Ga. App.* 451 (167 S. E. 776). In *Great Atlantic & Pacific Tea Co.* v. *Dowling,* 43 *Ga. App.* 549 (159 S. E. 609), it was said, "In the petition there is nothing to show that the tortious acts of the manager of the defendant company's store were

the result of an individual matter between him and the plaintiff, but on the contrary, the petition shows that the tortious acts of the manager 'arose out of and in connection with the business of the principal.'" See also *Hooks* v. *Sanford,* 29 *Ga. App.* 640 (116 S. E. 221). In *Central Railway Co.* v. *Brown,* 113 *Ga.* 414, 416 (38 S. E. 989, 84 Am. St. R. 250), it was said: "Some of the courts seem at one time to have been inclined to hold that a master could not be held liable for the wilful torts of his servant, because, it was said, if the servant through anger or malice committed an assault upon a person, he ceased for the time being to occupy the position of servant and acted independently; that inasmuch as he was not authorized to commit an assault he did not represent the master in the act but acted as an individual, the master therefore being not liable either in case, or in trespass. This argument has long since been exploded. *The theory that one may be a servant one minute and the very next minute get angry, commit an assault, and in that act be not a servant, was too refined a distinction."* (Italics ours.) Quoting further: "The courts have settled down to the common-sense doctrine that a master is liable for the torts of his servant, committed in the course of his servant's business, even though the tort be a wilful one."

Almost the identical question made in this case was made and settled by this court in *Atlanta Hub Co.* v. *Jones,* 47 *Ga. App.* 778 (171 S. E. 470), where it was held that "The language and conduct of the defendant's bill collector in his efforts to collect a bill from the plaintiff, as alleged in the petition, constituted a cause of action, and the court did not err in overruling the demurrer." See also *Gomez* v. *Great Atlantic & Pacific Tea Co.,* 48 *Ga. App.* 398 (172 S. E. 750).

It is insisted that there is no sufficient allegation as to damage. Mental pain and suffering is alleged, as well as physical injury to the wife. In the case of *Dunn* v. *Western Union Telegraph Co.,* 2 *Ga. App.* 845 (59 S. E. 189), it was said: "While mental pain and suffering, unaccompanied by injury to purse or person, affords no basis for any recovery for any action predicated upon wrongful acts merely negligent, yet such damages may be recovered in those cases when the plaintiff has suffered at the hands of the defendant a wanton voluntary and intentional wrong, the natural result of which is the causation of mental suffering and wounded feelings."

as was held in *Chapman* v. *Western Union Telegraph Co.*, 88 *Ga.* 763 (15 S. E. 901, 17 L. R. A. 430, 30 Am. St. R. 183). There can be no recovery for mental sufferings without actual physical damage, by reason of acts merely negligent. In the present case the alleged wrong was wilful, and also a part of a trespass or invasion of the home of the plaintiff. The decision in the case of *Young* v. *W. & A. R. Co.*, 39 *Ga. App.* 761, 767 (148 S. E. 414), was applicable thereto, and the court did not err in overruling the demurrer.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

Broyles, C. J., dissenting. "The principal is not liable for the wilful trespass of his agent, unless done by his command or assented to by him." Civil Code (1910), § 3603. "A corporation is not liable for the malicious acts of an agent unless such acts were expressly authorized by the corporation, or were within the scope of the duties of the agency, or were in themselves a violation of the duty owed by the corporation to the party injured, or such acts were ratified by the corporation." *Southern Ry. Co.* v. *Chambers*, 126 *Ga.* 404 (3) (55 S. E. 37, 7 L. R. A. (N. S.) 926). A railway company owes a higher duty than private corporations to protect persons transacting business with it, and yet where a person, while transacting business with a railway company, is insulted and humiliated by the language and conduct of an agent of the company, the company is not liable, if the improper conduct of the agent occurs "at a place other than that to which the public is invited by the establishment of the agency, and such conduct is neither authorized nor ratified by the company." *So. Ry. Co.* v. *Chambers*, supra.

"To recover damages on account of physical injuries resulting from fright, where there is no actual immediate personal injury, it must appear that the injuries were the *natural and proximate result of the fright or shock,* and that *the defendant could or should have known that the act producing the injuries would with reasonable certainty cause such a result;* and it must appear that the injuries resulted from such gross carelessness, coupled with a *knowledge of the probable physical results,* as amounted to wilful and reckless disregard of consequences; or that the fright (with its consequences) was brought about by a *deliberate and malicious intention on the part of the defendant to injure the plaintiff."* (Italics

ours.) *Goddard* v. *Walters*, 14 *Ga. App.* 722 (2) (82 S. E. 304); *Logan* v. *Gossett*, 37 *Ga. App.* 516 (140 S. E. 794). In the instant case the alleged unlawful and unprovoked assault by the defendant's agent or servant is not alleged to have been made at the command or with the assent of the defendant; and the general allegations to the effect that the assault was within the range and in the prosecution of the defendant's business, and within the scope of the employment of the agent or servant, are mere conclusions, not sustained by any facts set forth in the petition. *Southeastern Fair Asso.* v. *Wong Jung*, 24 *Ga. App.* 707 (102 S. E. 32). In my opinion the petition failed to set out a cause of action, and the court erred in overruling the general demurrer.