Michael SCHRIER, Appellant,

v.

HOME INDEMNITY COMPANY, Appellee.

No. 5326.

District of Columbia Court of Appeals.

Argued Dec. 1, 1970.

Decided Jan. 27, 1971.

Winston Childs, Washington, D. C., for appellant.

M. Michael Cramer, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and GALLAGHER and REILLY, Associate Judges.

REILLY, Associate Judge.

This is an appeal from an order granting a cross motion for summary judgment to appellee, an insurance carrier, in an action to recover an automobile or its value from appellant. Title to the automobile is claimed by appellee as subrogee of a former owner, a New Jersey company, reimbursed by appellee under a policy of theft insurance after it had been stolen. Appellant having bought the car from a Maryland dealer without knowledge of its prior theft, and asserting title as a *bona fide* purchaser, contends that the court below erred in denying his motion for summary judgment and granting appellee's motion.

Insofar as relevant to this appeal, the undisputed facts may be summarized as follows:

A 1967 Cadillac sedan was stolen on June 14th of that year from a car rental agency in Pennsauken, N. J. by some unknown person. Eventually it came into the hands of a Maryland dealer, Silver Hill Motors, through purchase from a New York wholesaler in used cars. On June 26, 1967, this car was purchased by appellant for the sum of $4300. It was delivered to him in Washington by a representative of the Silver Hill dealer, who signed a bill of sale and promised to procure a Maryland certificate of title for him. The car at the time bore Maryland dealer tags.

About a month later, the car was seized by the D. C. Metropolitan Police as stolen property.[1]

In a replevin action [2] brought by appellant in the Court of General Sessions against the police officer who had custody of the vehicle, appellant regained possession of the car under a judgment entered January 31, 1968, pursuant to a stipulation between the parties that "as between plaintiff and defendant, that the plaintiff is entitled to possession of said automobile."

On March 13, 1968 appellant obtained an amended order in this same action from another judge, stating that appellant had a right to ownership of the car. On the same date appellant applied to the Department of Motor Vehicles of the District of Columbia for a certificate of title which was issued the following day. Immediately thereafter appellant sold the car to an individual not a party to the case at bar. Meanwhile appellee had paid its insured $5300, the value of the automobile at the time of the theft.

In this court the meticulous findings of fact contained in the memorandum and order of the trial court stand uncontradicted. Appellant does contend, however, that the court's conclusion was erroneous because there is nothing in the findings which show he was a wrongdoer. Accordingly he argues that he was entitled to a judgment in his favor for one or more of the following reasons: (1) summary judg-

1. By that time Silver Hill Motors had gone out of business and its representative had disappeared without honoring his promise to obtain a title certificate for appellant. This information was supplied by counsel in oral argument in response to a question from the bench.

2. Schrier v. Creech, Civil Action No. GS 16432-67.

ment cannot be granted where there is a material issue of fact in dispute and in this case, appellant's statement that he was a *bona fide* purchaser raised such an issue; (2) appellant was a *bona fide* purchaser as defined in D.C.Code 1967, § 28:2–403(1), a provision of the Uniform Commercial Code; (3) appellee had notice of the replevin action pursuant to which appellant obtained a certificate of title; and (4) as a subrogee, appellee had no cause of action for conversion in the absence of proof that appellant was a wrongdoer.[3]

The first two grounds of reversal urged by appellant should be considered together. Appellant's position that summary judgment should not be granted if material issues of fact are in dispute is of course correct. But the statement that appellant was a *"bona fide* purchaser" goes not to the facts, but to the law because the words *"bona fide* purchaser" are words of art, and insofar as relevant to this appeal are defined in D.C.Code 1967, § 28:2–403(1) as *follows*

> A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. * * *[4]

We accept the premise that appellant was a good faith purchaser for value from the Maryland company in the sense that he paid a substantial amount of money to a merchant whose business, *i.e.,* dealing in automobiles, was such that customers would ordinarily have no reason to suspect any infirmity of title. It is true that appellant may have been careless in paying

his money to the seller without simultaneous delivery to him of a title certificate, but even if he had taken this precaution, the rights of an owner unaware of the whereabouts of the car would not have been impaired.

An automobile title certificate enabling its holder to register a car in his own name is not conclusive proof of ownership in this jurisdiction. Frei v. Gordon, D.C. App., 215 A.2d 488 (1965). The law of Maryland where similar title statutes have been enacted is no different. In Liberty Mutual v. American Auto Ins. Co., 220 Md. 497, 154 A.2d 826 (1959), the court of appeals for that state said

> This Court, and a majority of those of other jurisdictions, have rejected such a contention by holding that title registration merely raises a presumption of ownership, which, not being conclusive, is rebuttable by evidence to the contrary if such is produced.

Appellant's reliance on the second sentence of the quoted excerpt of the code is misplaced, for he assumes that the Maryland dealer at the time of sale to appellant was a "person with voidable title". In the context of the commercial code, however, the principle of voidable title refers to persons who have been entrusted with the possession of the goods they sell by consignors, creditors with unrecorded security interests, and certain other kinds of bailors. General Credit, Inc. v. Universal Credit Co., 68 App.D.C. 80, 99 F.2d 115 (1938).[5] But a possessor of stolen goods, no matter how innocently acquired, can never convey good title. Associate Discount Corp. v. Hardesty, 74 App.D.C. 414, 122 F.2d 18 (1941), for a sale of such merchandise, though to a *bona fide* purchaser

3. The argument is also made that no demand for return of the automobile was made by appellee. There is nothing in the record, however, to show that the owner, or its subrogee, knew that the car was in the possession of appellant before the latter sold it.

4. This subsection adopted the text of § 2–403 of the Uniform Commercial Code. Uniform Laws Annotated 305, 306, West Publishing Company (1968).

5. See official comments, Uniform Laws Annotated, *op. cit. supra* note 4, pp. 307, 308.

for value, does not divest the person from whom stolen, of title. General Fire & Casualty v. Kuffrey, 115 Ga.App. 121, 153 S.E.2d 590 (1967); Linwood Harvestore v. Cannon, 427 Pa. 434, 235 A.2d 377 (1967).

■ The third point urged by appellant —the judgment in the replevin action which enabled him to obtain a title certificate in the District—provides no ground for reversal. Appellee was not a party to the replevin suit. Nor is there anything in the record to show that appellee had actual notice or knowledge of that case while it was pending. Hence the final judgment of the court in that proceeding was not binding upon appellee under any principle of *res judicata* or collateral estoppel. Attwell v. Ricketts, 59 App.D.C. 199, 37 F.2d 995 (1930); Randolph v. District of Columbia, D.C.Mun.App., 156 A.2d 686 (1959).

With respect to appellant's final contention, we are not satisfied that the court below gave adequate consideration to the argument that a subrogee, in contradistinction to the actual victim of a theft, cannot recover on a theory of conversion from a party innocent of wrongdoing or culpable negligence. Appellant cites Washington Mechanics' Savings Bank v. District Title Insurance, 62 App.D.C. 194, 65 F.2d 827 (1933), as controlling law in this respect.

In that case, it was held that a bank which innocently honored a check drawn by and stolen from a title company bearing a forged endorsement and collected the amount of the check from the drawer's bank, was liable to the drawer, *i.e.*, the title company, in an action for conversion. But the court also held that a bonding company reimbursing the drawer for its loss under a fidelity bond on which it was surety for the dishonest employee could not obtain judgment under subrogation principles against the collecting bank, the court stating that where neither party is guilty of wrongdoing or culpable negligence, the

party invoking subrogation cannot recover unless its equities are greater than those of its adversary.

The rule of this case, sometimes referred to as the "superior equities" doctrine, was not a novel one when announced. The decision has been cited with approval in other circuits [6] and is apparently still good law in this jurisdiction. *See* Traveler's Indemnity Co. v. Riggs Nat'l. Bank, 116 U.S. App.D.C. 334, 323 F.2d 804 (1963), where a request to reconsider *Mechanics' Bank* was denied. The court below did not view these authorities as applicable because of a stipulation described as follows in the "Pre-trial Proceedings" form:

## STIPULATIONS

\*    \*    \*    \*    \*    \*

4. The Plaintiff is the proper party in this case based upon an indemnity agreement. No proof of the right under indemnity is required. \* \* \*

■ In our opinion this language is somewhat ambiguous, and hence we do not conclude that by entering into this stipulation, appellant intended to waive the "superior equities" doctrine as a defense. It would seem more likely that the purpose of the stipulation was to relieve appellee of the burden of presenting evidence of the insurance policy, payment to the insured, and other details relevant to its standing to sue. The concession that "\* \* \* Plaintiff is the proper party \* \* \* based upon an indemnity agreement" appears merely to be a recognition that appellee had the standing of an indemnitor.

■ Under such a stipulation, the appellee's right to recover would then depend upon a finding by the court concerning the relative equities of the parties, taking into consideration such questions as whether appellee was dilatory to the actual prejudice of the opposite party in making its

6. Bank of Fort Mill v. Lawyers' Title Insurance, 268 F.2d 313 (4th Cir. 1959); U.S. Fidelity and Guaranty v. First National Bank, 172 F.2d 258 (5th Cir. 1959); American Surety v. Bank of California, 133 F.2d 160 (9th Cir. 1943).

claim or whether appellant in purchasing a car without proof of title acted so negligently that its equities were inferior to those of claimant. *See* Anacostia Bank v. U. S. Fidelity & Guaranty, 73 App.D.C. 388, 119 F.2d 455 (1941).

Accordingly, we remand the case for findings on such issues as are pertinent to the "superior equities" rule.

Reversed and remanded for further proceedings.